UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE TRUSTEES OF THE PLUMBERS
AND PIPEFITTERS LOCAL 123
PENSION FUND, ET AL.,

       Plaintiffs,

v.                                  Case No.  8:05-cv-1663-T-24 TGW

DALE C. ROSSMAN, INC.,

       Defendant.

_____/

## ORDER

This cause comes before the Court on two motions: (1) Plaintiffs' Motion for Summary Judgment (Doc. No. 23), which Defendant opposes (Doc. No. 31), and (2) Defendant's Motion for Summary Judgment (Doc. No. 26) and Supplemental Memorandum (Doc. No. 36), which Plaintiffs oppose (Doc. No. 27).  The Court held a hearing on these motions on August 25, 2006.

**I.  Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on

any claim.  See id.  When a moving party has discharged its burden, the non-moving party must

then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to

interrogatories, and admissions on file," designate specific facts showing there is a genuine issue

for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is

no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the

Court must draw inferences from the evidence in the light most favorable to the non-movant and

resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of

Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the

evidence could draw more than one inference from the facts, and if that inference introduces a

genuine issue of material fact, then the court should not grant the summary judgment motion.

See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir.

1988).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury

could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).

## II.  Background

Plaintiffs are the trustees of employee benefit plans and multi-employer plans as defined

by ERISA for the plumbers and pipefitters of Local 123.  (Doc. No. 1, ¶ 2; Doc. No. 4, ¶ 2).

Defendant Dale C. Rossman, Inc. ("DCR, Inc.") entered into a collective bargaining agreement

("CBA") with Local 123, wherein DCR, Inc. agreed to make fringe benefit contribution

payments for work done by employees covered by the CBA.  (Doc. No. 23, Ex. A).  The

contribution payments are determined by multiplying the specified rate by the number of hours

2

worked by each employee covered by the CBA.  (Doc. No. 23, Ex. A, p. 10).

Article 27 of the CBA provides that DCR, Inc. ratifies the Declarations of Trusts, and the

Declarations of Trust for the Pension Plan, Health and Welfare Plan, and the Apprenticeship

Plan provide the following:

> Each Employer shall promptly furnish for inspection to the Trustees or their
> designee, on demand, all payroll records relating to all employees (not only those
> employees conceded by the employer to be covered by a collective bargaining
> agreement requiring contributions to the Fund). The payroll records required to be
> produced shall include but not be limited to: (1) IRS Form 941; (2)
> Unemployment Compensation Tax Form UCT-6; (3) payroll journal,
> disbursements journal, payroll subsidiary; (4) time and job record cards; (5)
> listing or schedule of subcontractors; (6) all other payroll records.
>
> Each Employer shall promptly furnish to the Trustees, on demand, the names of
> his employee, Social Security numbers, the hours worked by each employee and
> such other information as the Trustees may reasonably require in connection with
> the administration of the Trust Fund and for no other purpose. The Trustees may,
> by their representatives, examine the pertinent employment and payroll records of
> each Employer at the Employer's place of business whenever such examination is
> deemed necessary or advisable by the Trustees in connection with the proper
> administration the Trust Fund. The union shall, upon the request of the Trustees,
> promptly furnish information available to it in respect to an Employee's
> employment status.

(Doc. No. 23: Ex. B, p.11-12; Ex C, p.12; Ex D, p.17-18).

On May 11, 2004, Plaintiffs made a request to audit the payroll records of DCR, Inc., and

they requested access to the following records: (1) individual compensation records, payroll

registers, and payroll journals; (2) time cards; (3) federal and state tax form W-2's, 1099's, and

state quarterly tax returns; (4) personnel records of employees documenting job classifications

and principal duties/activities; (5) copies of reporting forms to any other trust funds; (6) job cost

records; (7) general ledger, cash disbursements journal, and supporting documentation (for

example, accounts payable invoices and check stubs); and (8) any other financial data the audit

may require.  (Doc. No. 23, Ex. F).

On November 18, 2004, Plaintiffs' auditor arrived to perform the audit.  The only records that DCR, Inc. provided to the auditor were DCR, Inc.'s Form 941's, state unemployment tax forms, and the monthly contribution reports.  (Doc. No. 1, ¶ 7; Doc. No. 4, ¶ 7).  The auditor was denied all of the other items on the list, and he was also denied access to state unemployment reports for companies that were related to DCR, Inc. due to common ownership.  (Doc. No. 1, ¶ 7; Doc. No. 4, ¶ 7).  As a result, Plaintiffs filed suit against DCR, Inc. requesting that the Court direct DCR, Inc. to provide Plaintiffs' auditors with access to DCR, Inc.'s individual compensation records, payroll registers, payroll journals, time cards, federal and state tax forms, state quarterly tax returns, personnel records of employees documenting job classifications, copies of reporting forms to other trust funds, job cost records, general ledger, and cash disbursements journal and supporting documentation.  (Doc. No. 1).  Additionally, Plaintiffs request that the Court direct DCR, Inc. to provide Plaintiffs' auditors with access to state unemployment reports and other required data for the following related companies: DCR Business Solutions, Inc., DCR Engineering Services, DCR Services, Inc., and Dale C. Rossman Controls, Inc.  (Doc. No. 1).

## III.  Motions for Summary Judgment

The parties have filed cross motions for summary judgment, and both parties seek attorneys' fees.  Plaintiffs argue that the Court should grant them summary judgment because: (1) they require the information at issue in order to perform their fiduciary duties under ERISA, and they are entitled to have their auditors review the records at issue pursuant to the trust documents; and (2) they are entitled to the records of the related companies in order to determine

whether the related companies are acting as a single employer with DCR, Inc.  DCR, Inc.

opposes Plaintiffs' motion and argues that the Court should grant it summary judgment because:

(1) the documents that DCR, Inc. gave the auditors were sufficient for the auditors to conduct the

audit; (2) the auditors are not entitled to review the documents of the related companies, and (3)

the related companies are not a single employer with, or an alter ego of, DCR, Inc.  Accordingly,

the Court will address each argument.

### A.  Background on Trustees' Fiduciary Duties Under ERISA

ERISA "assumes that trustees will act to ensure that a plan receives all funds to which it

is entitled, so that those funds can be used on behalf of participants and beneficiaries, and that

trustees will take steps to identify all participants and beneficiaries, so that the trustees can make

them aware of their status and rights under the trust's terms."  Central States, Southeast and

Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 571-72 (1985).

Congress has invoked the common law of trusts to define the general scope of a trustee's

authority and responsibility under ERISA.  See id. at 570.  One of the fundamental common law

duties of a trustee is to preserve and maintain trust assets, which requires the trustee to determine

the location of the trust property and to take control of it.  See id. at 572.  Not only do the

common law duties of a trustee suggest that trustees of employee benefit plans have the authority

to audit employers to ensure that proper contributions are being made, but also "[t]he Secretary

of Labor has explicitly interpreted the trustees' duty to prevent employer use of trust assets as

creating a . . . duty to verify employer determinations and requiring plans to adopt systems for

policing employers."  Id. at 573.

Thus, trustees of employee benefit plans must have adequate information in order to

perform their fiduciary duties of collecting, administering, and paying out benefits.  <u>See</u>

<u>Trucking Employees of North Jersey Welfare Fund, Inc. v. Brockway Fast Motor Freight Co.</u>,

130 F.R.D. 314, 323 (D.N.J. 1989)(citation omitted).  As a result, the parties' interpretation of

the CBA and trust documents in this case must be examined in light of the trustees' fiduciary

responsibility to the employees and the policy concerns underpinning ERISA.  <u>See</u> <u>id.</u>

### B.  Right to Review Records Under the Trust Documents

Plaintiffs argue that they are entitled to have their auditors review the records at issue in

this case pursuant to the trust documents.  The records at issue in this case are (1) the following

documents from DCR, Inc.: (a) individual compensation records, payroll registers, and payroll

journals; (b) time cards; (c) federal and state tax forms, and state quarterly tax returns; (d)

personnel records of employees documenting job classifications and principal duties/activities;

(e) copies of reporting forms to any other trust funds; (f) job cost records; (g) general ledger,

cash disbursements journal, and supporting documentation (for example, accounts payable

invoices and check stubs); and (2) state unemployment reports and other required data for the

related companies.

DCR, Inc. argues that it is not required to give the auditors any further documentation

than it has already given them, since DCR, Inc. contends that: (1) the documents that it gave the

auditors were sufficient for the auditors to conduct the audit; and (2) the auditors are not entitled

to review the documents of the related companies.  In reviewing whether the auditors have the

right to review the requested documents, the Court will separate the documents into two

categories: (1) the documents requested from DCR, Inc., and (2) the documents requested from

the related companies.

6

### 1.  Documents from DCR, Inc.

The first category of documents consist of the following documents from DCR, Inc.: individual compensation records, payroll registers, and payroll journals, time cards, federal and state tax forms, state quarterly tax returns, personnel records of employees documenting job classifications and principal duties/activities, copies of reporting forms to any other trust funds, job cost records, and general ledger, cash disbursements journal, and supporting documentation (for example, accounts payable invoices and check stubs).  One of Plaintiffs' auditors, Gerald Sauseda, explained the importance of the requested payroll records.[1]

Sauseda explained that the Form 941's that DCR, Inc. turned over would not adequately provide him with all of the information that he needed, because the Form 941 only lists gross wages, while employer contributions are based on the number of hours each covered employee worked.  (Sauseda depo[2], p. 18-19).  Sauseda stated that he needed the employees' weekly payroll records in order to determine the hours worked by each employee and the hours of overtime, double-time, sick time, and vacation time that the employees may have been paid for. (Sauseda depo, p. 19).  Sauseda also stated that he needed the federal and state tax forms, W-2's. 1099's, and state quarterly tax returns in order to tie them into the gross wages reported in the payroll register and make sure that all of the gross wages could be traced back.  (Sauseda depo, p. 20).

---

[1]The Court notes that DCR, Inc. has argued that the Court should not consider the affidavit of W. Harris Hutto that Plaintiffs submitted in support of their motion for summary judgment, since Plaintiffs failed to designate Hutto as an expert witness.  The Court has not considered Hutto's declaration in ruling on the motions for summary judgment.

[2]Doc. No. 37

Sauseda also stated that individual compensation records, payroll registers, and payroll journals are needed in order to ensure that the actual hours worked equals the actual payroll. (Sauseda declaration[3], ¶ 5).  He also stated that review of time cards is necessary, because there might be discrepancies in the actual payroll and the auditor would need to go through the time cards in order to verify the payroll system.  (Sauseda declaration, ¶ 6).  Additionally, Sauseda stated that he needed the job cost records in order to check the pay rate that each employee was receiving, as well as to check that the employees were working on a job that was in the geographical area of Local 123.  (Sauseda depo, p. 23).

Sauseda also stated that the general ledger and cash disbursements journal, along with supporting documentation, are requested to verify the hours worked by employees.  (Sauseda declaration, ¶ 9).  Specifically, he stated that depending on the detail in the accounting records, the requested records may indicate individuals paid in cash and/or the existence of other entities using the same employee to perform work.  (Sauseda declaration, ¶ 9).  He further stated that auditors need to make sure that employees on the payroll are not working at another one of the employer's entities without having contributions made on the hours worked for the other entity. (Sauseda declaration, ¶ 9).

Sauseda also stated that he sometimes looks at a company's cash disbursements journal in order to see the transactions between related companies.  (Sauseda depo, p. 27).  Specifically, he would look at whether employees of DCR, Inc. were working for one of the related companies while doing the same jobs as Local 123.  (Sauseda depo, p. 27; Sauseda declaration, ¶ 11).

---

[3]Doc. No. 28

The trust documents in this case provide the following:

Each Employer shall promptly furnish for inspection to the Trustees or their designee, on demand, all payroll records relating to <u>all</u> employees (not only those employees conceded by the employer to be covered by a collective bargaining agreement requiring contributions to the Fund). The payroll records required to be produced shall include but not be limited to: (1) IRS Form 941; (2) Unemployment Compensation Tax Form UCT-6; (3) payroll journal, disbursements journal, payroll subsidiary; (4) time and job record cards; (5) listing or schedule of subcontractors; (6) all other payroll records.

Each Employer shall promptly furnish to the Trustees . . . such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund . . ..

(Doc. No. 23: Ex. B, p.11-12; Ex C, p.12; Ex D, p.17-18).  Based on a review of the documents requested from DCR, Inc., the trust documents, and Sauseda's testimony regarding the need for these documents, the Court finds that the auditors' request for these documents was within their authority and that the documents being requested are necessary in order for the auditors to conduct their audit to determine whether all required employer contributions were made.  The Court notes that the trust documents provide that DCR, Inc. must supply all payroll records to the auditors, and there is no question that individual compensation records, payroll registers, payroll journals, time cards, federal and state tax forms, state quarterly tax returns, personnel records of employees documenting job classifications and principal duties/activities, and job cost records all fall within the category of payroll records.

Furthermore, with respect to the auditors' request for DCR, Inc.'s general ledger, cash disbursements journal, and supporting documentation, the Court finds that the auditors are also entitled to these documents.  <u>See</u> <u>Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co., Inc.</u>, 932 F.2d 1443, 1452 (11th Cir. 1991)(finding that examining a company's cash disbursements journal can be relevant to an audit by an employee benefit trust

9

fund, because transactions in the cash disbursement journal could show that the company is concealing payments to employees); see also Combs v. King, 764 F.2d 818, 824 (11th Cir. 1985)(considering the items set forth in 29 C.F.R. § 486.3, which is the regulation to 29 U.S.C. § 308b [§308b is the predecessor to ERISA], to be documents that employers must maintain in order for the trustees of employee benefit plans to determine the accuracy of employer contributions; items set forth in § 486.3 include journals and ledgers).  In this case, Sauseda has stated that he wants to examine DCR, Inc.'s cash disbursements journal in order to determine whether employees of DCR, Inc. were working for one of the related companies while doing the same jobs as Local 123.  Thus, DCR, Inc.'s general ledger, cash disbursements journal, and supporting documentation are necessary in order for the auditors to determine whether employees of DCR, Inc. that were covered by the CBA were being paid by a related company for work they were performing for DCR, Inc. without contributions being made for them.  As such, the Court finds that these documents are both relevant to the audit and authorized by the trust documents, since the trust documents provide that "[e]ach Employer shall promptly furnish to the Trustees . . . such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund." (Doc. No. 23: Ex. B, p.11-12; Ex C, p.12; Ex D, p.17-18).

Finally, with respect to the auditors' request for copies of reporting forms from DCR, Inc. to any other trust funds, Sauseda explained why these documents were requested.  Specifically, he stated that sometimes employees from another local union would be working in the same area as Local 123, and for those situations, the auditors need to check to make sure that the proper trust fund was paid.  (Sauseda, p. 21-23).  Again, the Court finds that these documents are both

relevant to the audit and authorized by the trust documents, since the trust documents provide

that "[e]ach Employer shall promptly furnish to the Trustees . . . such other information as the

Trustees may reasonably require in connection with the administration of the Trust Fund." (Doc.

No. 23: Ex. B, p.11-12; Ex C, p.12; Ex D, p.17-18).

DCR, Inc. responds that the documents that it gave the auditors were sufficient for the

auditors to conduct the audit.  DCR, Inc., however, has offered no evidence to support this

assertion, and Sauseda has stated in his deposition and in his declaration that the requested

documents are required in order for him to perform the audit of DCR, Inc.  As a result, the Court

rejects DCR, Inc.'s argument that the documents that it gave the auditors were sufficient for the

auditors to conduct the audit.  See Brockway, 130 F.R.D. at 324 (stating that the defendant's

failure to offer any expert testimony to contradict the plaintiff's expert's position that the

requested documents were necessary for the audit required the court to defer to the plaintiff's

expert regarding the necessity of the documents for the audit).

DCR, Inc. also argues that providing the documents at issue is over-burdensome, the

documents contain confidential and proprietary information, and that the requested documents

are irrelevant.  DCR, Inc., however, fails to offer any evidence to substantiate these claims.

Furthermore, to the extent that DCR, Inc. argues that the documents contain confidential

and proprietary information, the Court notes that the parties could choose protective measures

that best suit their needs and then submit a protective order for court approval.  See id..

Additionally, the Court notes that Sauseda stated that he intended to be the only person viewing

the documents and that he would not take the documents out of DCR, Inc.'s office.  (Sauseda

depo, p. 23-24).

The Court also notes that Sauseda's deposition testimony and statements in his declaration contradict DCR, Inc.'s unsubstantiated claim that the documents at issue are irrelevant.  "Absent a showing of bad faith, the reasonableness and propriety of an audit are better left to the generally accepted standards of the accounting profession."  Id. (citation omitted).

DCR, Inc. also argues that there has been no showing that DCR, Inc. has not made all of the required contributions, and as such, it should not be required to turn over the requested documents.  The Court rejects this argument, however, since DCR, Inc. has not shown that Plaintiffs are required to show that there is "cause" for an audit before they can perform an audit.

Accordingly, the Court finds that DCR, Inc. must allow the auditors to review the requested documents of DCR, Inc.  Specifically, the auditors are allowed to review DCR, Inc.'s individual compensation records, payroll registers, payroll journals, time cards, federal and state tax forms, state quarterly tax returns, personnel records of employees documenting job classifications, copies of reporting forms to other trust funds, job cost records, general ledger, and cash disbursements journal and supporting documentation.  The Court finds that review of these documents by the auditors is necessary in order for the auditors to determine whether DCR, Inc. has made all of the required contributions.  Furthermore, the Court finds that review of these documents is consistent with the purposes and policies of ERISA.

## 2.  State Unemployment Reports from Related Companies

The second category of documents consists of state unemployment reports and other requested data from companies that are related to DCR, Inc. through common ownership. Sauseda has stated that if the records of a company show transactions between the original

company and a related company, he would then request the state unemployment records (UCT-6 forms) for the related company. (Sauseda declaration, ¶ 12). The state unemployment records list every employee that has worked for that company. (Sauseda, declaration, ¶ 12). If the auditor finds that the same employee worked for the original company and a related company, then the auditor needs to make sure that contributions for all of the hours worked by the employee are sent to the proper funds if the work done by the employee at the related company was the same type of work performed by the employee at the original company. (Sauseda declaration, ¶ 12).

DCR, Inc. argues that the auditors are not entitled to review the documents of the related companies. Plaintiffs argue that these documents may be necessary in order to conduct the audit; they state that whether the auditors will need to review the state unemployment records of related companies will be determined after the auditors review the records of DCR, Inc. Thus, Plaintiffs argue that since there is a reasonable basis for seeking these records, the auditors are entitled to review them. The Court, however, rejects this argument, since Plaintiffs have failed to cite any case law to support their proposition that an auditor is entitled to review all relevant documents that he has a reasonable basis for seeking, even if those documents belong to a different company than the one that signed the collective bargaining agreement.[4]

_____

[4]The Court notes that Plaintiffs rely on <u>Central States</u> to support their argument that DCR, Inc. should be required to turn over the documents of the related companies even though DCR, Inc. does not concede that the employees of the related companies are covered under the CBA. Plaintiffs' reliance on <u>Central States</u> is misplaced, since the Supreme Court in that case was faced with the issue of whether companies that had signed a collective bargaining agreement had to provide documentation for *all of their employees* even though the companies were contending that some of their employees were not covered under the collective bargaining agreement; the case did not deal with reviewing documents from a related company that was not a party to the collective bargaining agreement. <u>Central States</u>, 472 U.S. at 562-63.

13

Plaintiffs also argue that they are entitled to these documents based on the language of the trust documents, specifically pointing to the following language: "Each Employer shall promptly furnish for inspection to the Trustees or their designee, on demand, all payroll records relating to <u>all</u> employees (not only those employees conceded by the employer to be covered by a collective bargaining agreement requiring contributions to the Fund)."  Plaintiffs rely on this provision, arguing that DCR, Inc. contends that employees of the related companies are not covered by the CBA, and this provision requires DCR, Inc. to furnish payroll records for all of its employees, even if it does not concede that the employee is covered by the CBA.  The Court rejects this argument.

In making their argument, Plaintiffs are assuming that employees of DCR, Inc. are being paid by the related companies (and thus arguing that if DCR, Inc.'s covered employees are being paid by related companies, then the related companies' payroll records are records that must be provided to the auditors under the terms of the trust agreements).  However, Plaintiffs are seeking this documentation from the related companies in order to prove that DCR, Inc.'s employees are actually being paid by related companies.  Thus, Plaintiffs' argument is circular: they argue that they are entitled to the documents of the related companies if DCR, Inc.'s covered employees are being paid by the related companies, yet they cannot prove this theory of entitlement without first getting these records.  Accordingly, the Court finds that Plaintiffs have not shown that the provisions of the CBA and/or the trust documents entitle the auditors to

review the documents of the related companies.[5]

### C.  Single Employer Status

Next, Plaintiffs argue that they are entitled to request limited records from the related companies in order to determine whether the related companies are acting as an integrated enterprise or single employer with regards to the employees covered under the CBA.   A company can be bound by a collective bargaining agreement made by another company if the non-signatory company is shown to be a single employer with the signatory company and together the two companies represent an appropriate employee bargaining unit.  See Lihli Fashions Corp., Inc. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996).  In the instant case, the related companies are not parties to the CBA.

Courts consider "separate business entities to be a single employer where they comprise an integrated enterprise."  Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256 (1965)(citation omitted).  In determining whether two entities are a single employer, courts consider four factors: "interrelation of operations, common management, centralized control of labor relations and common ownership."  Id. (citations omitted).  "To demonstrate single employer status, not every factor must be present, and no particular factor is controlling."  Lihli, 80 F.3d at 747(citation omitted).  "Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an arms length relationship found among unintegrated companies."

---

[5]Additionally, the Court notes that Plaintiffs are not even certain that review of the state unemployment reports for the related companies will even be warranted, since Plaintiffs stated in their motion for summary judgment and at the hearing that the auditors would not even need to review such documents unless the auditors first find transactions between DCR, Inc. and a related company when the auditors review DCR, Inc.'s cash disbursements journal.

Id. (internal quotations and external citation omitted).

At the hearing, Plaintiffs conceded that they cannot currently provide evidence to support a single employer theory, since they did not want to go through the expense of alter ego litigation at this time.  However, without such a showing, there is no basis for this Court to find that Plaintiffs are entitled to review the documents of the related companies, since such authority is not given in the CBA or trust documents, and the related companies have not signed the CBA or trust documents.

The Court notes that Plaintiffs allege in their motion for summary judgment that they are seeking the documents from the related companies in order to determine whether any of the related companies are acting as a single employer with DCR, Inc.  However, the Court finds that Plaintiffs are not entitled to review the documents of the related companies in order to attempt to prove that one or more of the related companies and DCR, Inc. are a single employer; instead, Plaintiffs must prove single employer status before seeking such documents.

Furthermore, upon review of the evidence before the Court, Plaintiffs have not raised a genuine issue of material fact regarding whether one or more of the related companies and DCR, Inc. are a single employer.  In their motion for summary judgment, Plaintiffs focus on one specific related company, DCR Construction Services, Inc.  ("DCR Construction").[6]

As stated above, in determining whether two entities are a single employer, courts consider four factors: interrelation of operations, common management, centralized control of

---

[6]The Court notes that DCR Construction is not listed in the complaint as a related company from which Plaintiffs seek documents, nor is DCR Construction a named defendant in this case.  As such, the Court doubts that it could order DCR Construction to turn over any documents in this case if the Court found that the auditors should be able to review DCR Construction's documents.

labor relations, and common ownership.  However, based on the evidence before the Court, the only factor that weighs in favor of single employer status is common ownership.

DCR, Inc. and DCR Construction are both owned by DCR Services, Inc., and Dale C. Rossman is the sole shareholder of DCR Services, Inc.  (Rossman affidavit[7], ¶ 2-4).  Thus, both DCR, Inc. and DCR Construction have common ownership.

However, there is no common management between the two companies, nor is there centralized control of labor relations.  Mr. Rossman is the President of DCR Construction, and he is a Director of DCR, Inc.  (Rossman affidavit, ¶ 2).  However, Mr. Rossman is not active in the day-to-day management of either company, nor is he involved in labor relations issues for either company.  (Rossman affidavit, ¶ 5-6; McCormack affidavit[8], ¶ 4; Brown affidavit[9], ¶ 4).

Ronald Jordan is the Vice President, Secretary, and Treasurer of both companies. (Jordan affidavit[10], ¶ 2).  However, Mr. Jordan is not active in the day-to-day management of either company, nor is he involved in labor relations issues for either company.  (McCormack affidavit, ¶ 4; Brown affidavit, ¶ 4: Jordan affidavit, ¶ 3).

Additionally, there is no interrelation of operations.  To begin with, DCR, Inc. and DCR Construction do not perform the same kinds of services.  (Rossman affidavit, ¶ 7).  DCR, Inc. is an electrical contractor.  (Brown affidavit, ¶ 5).  Occasionally, DCR, Inc. has incidental pipefitting work on its electrical projects, and when it has such work in the area serviced by

---

[7]Doc. No. 26, Ex. 5

[8]Doc. No. 26, Ex. 4

[9]Doc. No. 26, Ex. 3

[10]Doc. No. 26, Ex. 6

Local 123, DCR, Inc. employs individuals who are represented by Local 123.  (Brown affidavit, ¶ 6-7).

DCR Construction is a general contractor that performs construction services. (McCormack affidavit, ¶ 5).  DCR Construction does not do electrical work.  (McCormack affidavit, ¶ 5).

DCR, Inc. does not do any jobs or projects jointly with DCR Construction that involve work covered by the CBA.  (Brown affidavit, ¶ 12).  Furthermore, DCR, Inc. and DCR Construction do not employ any individuals jointly with each other, and each company's managers and supervisors do not have any role in any aspect of the management or supervision of the other company.  (Brown affidavit, ¶ 13, 16; McCormack affidavit, ¶ 10, 13).  Additionally, each company's contracts are separately negotiated and neither company participates in negotiating contracts for the other company.  (Brown affidavit, ¶ 15; McCormack affidavit, ¶ 12)

Both companies are completely independently incorporated and operated, and both companies share no debts, accounts, books and records, employees, equipment, supervisors, contracts, automobiles, headquarters, or offices.  (Rossman affidavit, ¶ 7; McCormack affidavit, ¶ 7, 8, 9 , 11; Brown affidavit, ¶ 9, 10, 11, 14).  The only evidence of overlap in operations before the Court is that DCR Business Solutions performs some of DCR, Inc.'s accounting work and writes checks for DCR Construction.  (McCormack depo[11], p.7; Brown depo[12], p.19-20).

Thus, based on the above, the Court finds that Plaintiffs have not shown that DCR, Inc.

---

[11]Doc. No. 26, Ex. 10

[12]Doc. No, Ex. 9

and DCR Construction (or any other related company) are a single employer.[13]  As such, the

Court finds that Plaintiffs have not shown that they are entitled to documents from DCR

Construction or any other related company, and the Court grants DCR, Inc.'s motion on this

issue.

### D.  Attorneys' Fees

Both parties request that the Court award them attorneys' fees if the Court grants their

motion for summary judgment.  Pursuant to 29 U.S.C. § 1132(g)(1), the Court, in its discretion,

may award a reasonable attorneys' fee and costs of the action to either party.  In determining

whether attorneys' fees should be award, the Court considers five factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of
> the opposing parties to satisfy an award of attorneys fees; (3) whether an award of
> attorneys fees against the opposing parties would deter other persons acting under
> similar circumstances; (4) whether the parties requesting attorneys fees sought to
> benefit all participants and beneficiaries of an ERISA plan or to resolve a
> significant legal question regarding ERISA itself; and (5) the relative merits of the
> parties' positions.

Vertex Construction, 932 F.2d at 1453 (citations omitted).

Upon consideration of these factors, the Court finds that the neither party should be

awarded attorneys' fees.  The Court finds that neither party acted in bad faith, and there has been

no showing regarding the ability of either party to satisfy an award of attorneys' fees.

Furthermore, both parties' positions had some merit (i.e., Plaintiffs' position that they were

entitled to documents from DCR, Inc. had merit, while DCR, Inc.'s position that they were not

---

[13]Additionally, the Court notes that there is no evidence before the Court regarding
whether DCR, Inc. and DCR Construction (or any other related company) represent an
appropriate employee bargaining unit.

required to turn over documents of related companies had merit).  While an award of attorneys

fees might deter other persons acting under similar circumstances, the Court finds that given the

fact that both parties' positions had some merit, it is unnecessary to award attorneys' fees to

either party in order to deter future similar conduct by others.  Accordingly, the Court denies

both parties' request for attorneys' fees.

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Plaintiffs' Motion for Summary Judgment (Doc. No. 23) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court finds that DCR, Inc. must allow the auditors to review the following documents of DCR, Inc.: DCR Inc.'s individual compensation records, payroll registers, payroll journals, time cards, federal and state tax forms, state quarterly tax returns, personnel records of employees documenting job classifications, copies of reporting forms to other trust funds, job cost records, general ledger, and cash disbursements journal and supporting documentation.  Otherwise, the motion is **DENIED**.

(2)     Defendant's Motion for Summary Judgment (Doc. No. 26) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court finds that Plaintiffs have not shown that they are entitled to have their auditors review any documents from any company other than DCR, Inc. Otherwise, the motion is **DENIED**.

(3)     The Clerk is directed to enter judgment in favor of Plaintiffs to the extent that

Plaintiffs seek documents from DCR, Inc. and to enter judgment in favor of

Defendant to the extent that Plaintiffs seek documents from companies that are

related to DCR, Inc.

(4)     The Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of August, 2006.

Susan C. Bucklew

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record